1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SALLY HA,

              Plaintiff,

    v.

BARCLAYS BANK DELAWARE,

              Defendant.

Case No.  24-cv-00668-BLF

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

[Re:  ECF No. 8]

       Pro se Plaintiff Sally Ha's First Amended Complaint alleges one claim for breach of contract against Defendant Barclays Bank Delaware ("Barclays").  ECF No. 5 ("FAC").  Defendant has filed a motion to dismiss, ECF No. 8 ("Mot."), ECF No. 17 ("Reply"), which Plaintiff opposes.  ECF No. 16 ("Opp.").  The Court finds the matter suitable for disposition without oral argument.  *See* Civ. L.R. 7-1(b).  For the reasons described below, the Court GRANTS Defendant's motion WITHOUT LEAVE TO AMEND.

**I.    BACKGROUND**

       Plaintiff alleges that she opened a credit card account with Barclays in June 2016.  FAC ¶ 8.  Plaintiff alleges that in accordance with the attached cardmember agreement, Plaintiff became a "private investor" of Barclays US.  *Id.*; *see id.*, Ex. A ("Agreement").

       On August 22, 2023, Plaintiff alleges she "performed her contractual obligations to the agreement shown in Exhibit A."  FAC ¶ 11.  Plaintiff alleges that she met those obligations by sending "a notice claiming all titles, rights, interest and equity to the account that was created with plaintiff's security collateral."  *Id.* ¶ 12.  Plaintiff alleges to have sent three such "notices" to Barclays, instructing it to "transfer[] the plaintiff's positive credits to the principal amounts for set off."  *Id.*  Plaintiff defines "security collateral" as arising from her application for the credit

account.  *Id.* ¶¶ 20-22.

That same day, Plaintiff alleges she sent Barclays a written "Letter of Credit Claim," "claiming all titles, rights, interests and equity and instructed for the positive credits to be transferred to the due account."  FAC ¶ 14.  Plaintiff alleges this letter included an "[i]ndorsed bill of exchange for [Plaintiff's account]"; a "[t]ender of payment titled 'Letter of Credit Claim'"; and a "[c]ertified copy of Durable Power of Attorney."  *Id.*

On September 6, 2023, Plaintiff alleges she sent a "second written notice" to Barclays "providing for an 'Opportunity to Cure' claiming all titles, rights, interest and equity to the contract" and "instruct[ing] [Barclays] to transfer the acceptance of the positive balance to the appropriate account for set off."  *Id.* ¶ 15.  Plaintiff alleges this "Opportunity to Cure" included another "[i]ndorsed bill of exchange for [Plaintiff's account]"; a "[t]ender of payment titled 'Opportunity to Cure'"; and "Federal Reserve Section 29."  *Id.*

Finally, on September 18, 2023, Plaintiff alleges to have sent a "Notice of Default" that "claim[ed] all titles, rights, interest and equity to the contract," again "instruct[ing] [Barclays] to transfer plaintiff's positive credits to the due account" and including an "[i]ndorsed bill of exchange"; a "[t]ender of payment titled 'Notice of Default'"; and "Federal Reserve Section[s] 29 [and] 16."  *Id.*  ¶ 17.  Plaintiff alleges that Barclays closed Plaintiff's account "without [her] authorization."  *Id.* ¶ 18.

Plaintiff filed the instant suit on February 5, 2024.  *See* ECF No. 1.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

Pro se pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This is particularly true with respect to the factual allegations in a pro se complaint. *Chambers v. C. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023). "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up).

## III.   DISCUSSION

### A.   Governing Law

The parties dispute which governing law applies. Defendant appears to argue that California law applies. Mot. at 7 (listing the elements for breach of contract under California law).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff responds that "the agreement explicitly stipulates that federal law applies."  Opp. at 3.

2   Neither party is correct.  The agreement states, "THIS AGREEMENT AND YOUR

3   ACCOUNT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE AND,

4   AS APPLICABLE, FEDERAL LAW."  FAC, Ex. A at 18.  Thus, Plaintiff's breach of contract

5   claim is governed by Delaware law.  The Court will separately address Plaintiff's invocation of

6   various federal laws below.

7   **B.    Breach of Contract**

8   Under Delaware law, breach of contract is a claim with three elements: "1) a contractual

9   obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the

10  plaintiff."  *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1279 n.28 (Del. 2016)

11  (quoting *H–M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003)); *see also VLIW*

12  *Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  The Court addresses the

13  three elements in turn.

14  First, there is no dispute that Plaintiff plausibly alleges an agreement between the parties.

15  *See* FAC, Ex. A; Mot. at 7; Opp. at 3.  Specifically, the contract at issue is the Agreement attached

16  to the FAC as Ex. A, and this Agreement outlines contractual obligations between the parties.

17  Second, the Court addresses whether Plaintiff alleges breach of any obligation in the

18  Agreement by Defendant.  Defendant argues that Plaintiff cannot allege breach of the Agreement

19  because "Plaintiff cannot point to any contractual provision that states Barclays will grant her

20  unlimited credit without payment of the minimum balance due in U.S. Funds."  Mot. at 8.

21  Plaintiff responds that she "performs her contractual obligation by tendering her payment with a

22  restrictively indorsed bill of exchange along with instructions on processing her payment in

23  accordance with the provision of the agreement."  Opp. at 4.

24  The First Amended Complaint alleges the following:

25          20.  Defendant breached the contract by concealing material facts,
26      such as how the funds for the "loan" will be coming from the
        plaintiff's application (security collateral).
27          21.  Defendant breached the contract by misrepresenting information
        on the agreement to deceive plaintiff into trading her security
        collateral as an alleged borrower.
28          22.  Defendant breached the contract by not disclosing that the

4

> plaintiff's security collateral has the same value as "money" or federal reserve notes.
>
> 23. Defendant breached the contract by using the plaintiff's application, which serves as a financial asset, to provide a loan back to the plaintiff with the economics similar to stealing.
>
> 24. Defendant continued to pressure plaintiff to make payments under duress, threatening to close the account without authorization by the plaintiff, even though everything was paid in advance with the plaintiff's security collateral.

The core of Plaintiff's legal theory appears to be that, by refusing to accept her "bill of exchange" and the documents that accompanied it as payment for the amount due on her account, Barclays breached its contractual obligations to her. Courts regularly find this breach of contract theory legally baseless. *See Ha v. New Cingular Wireless PCS, LLC*, No. 24-CV-00135-VKD, 2024 WL 967003 (N.D. Cal. Mar. 6, 2024) (collecting cases); *McElroy v. Chase Manhattan Mortg. Corp.*, 134 Cal. App. 4th 388, 390, 393 (2005) (describing similar "bills of exchange" documents as "worthless piece[s] of paper, consisting of nothing more than a string of words that sound as though they belong in a legal document, but which, in reality, are incomprehensible, signifying nothing"). Plaintiff's theory here is equally baseless. The Agreement does not define terms or provisions such as "bills of exchange" or "security collateral." *See generally* FAC, Ex. A. And Plaintiff cites no provision of the Agreement that requires Defendant to accept any of these documents as "payment." On their face, the materials attached to the complaint do not appear to constitute or evidence payment of any kind to Defendant. Thus, the Court finds that Plaintiff has failed to allege any breach of the Agreement by Plaintiff.

Plaintiff also asks the Court to order Barclays to "reinstate" her account. FAC ¶ 27(B). But as Defendant notes, and Plaintiff does not dispute, the Agreement includes a provision stating that Barclays can close the account at any time without the cardholder's consent. FAC, Ex. A, at 16 ( "We may suspend or close your account or otherwise terminate your right to use your account . . . at any time and for any reason"); Mot. at 3–4. Given the clear and unambiguous language in the Agreement, the Court finds that Plaintiff has not alleged that Barclays breached the Agreement by closing the account or that Plaintiff is entitled to reinstatement.

Third, the Court addresses whether Plaintiff alleges any resulting damage. Defendant argues that Plaintiff's damages theory "does not result from an actual term of the [Agreement]."

5

United States District Court
Northern District of California

1   Mot. at 8–9.  Plaintiff does not directly address Defendant's argument.

2        The First Amended Complaint alleges that Plaintiff should have been given a monthly

3   amount of credit regardless of whether she paid the monthly minimum payment.  FAC ¶¶ 9,

4   27(D).  But Plaintiff does not point to any term or provision in the Agreement requiring such

5   payments.  Because this alleged damage does not result from an actual term of the Agreement,

6   Plaintiff fails to allege resulting damage caused by the alleged breach of contract.

7        Plaintiff has failed to allege breach of the Agreement or any resulting damage; thus,

8   Plaintiff has failed to allege breach of contract.  Accordingly, the Court GRANTS Defendant's

9   motion to dismiss.

10       **C.    Claims Under Federal Law**

11       While the sole cause of action pled is breach of contract, Plaintiff also claims rights under

12   the Federal Reserve Act and Securities and Exchange Act of 1934 ("Exchange Act").

13       First, Plaintiff seeks damages under "Federal Reserve Section 16" and "Federal Reserve

14   Section 29."  FAC ¶ 17.  Defendant argues that these sections do not apply to Plaintiff's claim.

15   Mot. at 4.  Plaintiff does not respond to Defendant's argument.  *See* Opp. at 5.

16       It appears that the First Amended Complaint is referring to sections 16 and 29 of the

17   Federal Reserve Act, 12 U.S.C. § 411–21 and § 504; see FAC, Ex. H.  To the extent Plaintiff

18   attempts to assert claims under these statutes, these efforts likewise fail.  Courts consistently reject

19   similar arguments because sections 16 and 29 of the Federal Reserve Act "do not create a private

20   cause of action."  *Smith v. Crowl*, No. 1:23-cv-01474-JLT-BAM, 2024 WL 150251, at *3 (E.D.

21   Cal. Jan. 12, 2024) (collecting cases).  Similarly, here, Plaintiff's invocation of the Federal

22   Reserve Act does not state a claim.

23       Plaintiff also argues that Rule 10b-5 of the Exchange Act applies because Defendant is "a

24   corporation involved in the exchange of securities."  Opp. at 3.  Plaintiff argues that Defendant

25   "induce[d] plaintiff into exchanging her security as a consumer rather than a private investor

26   entitled to interest and equity from the transactions involving the trade of her security"  *Id.*

27   Defendant argues in reply that this law does not apply because "[t]he Agreement, on its face, is

28   clear that it did not involve the sale of a security or an investment."  Reply at 3.

The Court agrees with Defendant.  As an initial matter, Plaintiff did not plead any securities law violation, or even any transaction involving a security.  Plaintiff points to no provision in the agreement involving the of a security or investment.  Rather, the Agreement appears to be a standard credit card agreement that sets forth the terms of an open-ended account whereby Barclays agreed to extend credit in exchange for Plaintiff's promise to make minimum monthly payments.

In sum, the Court finds that the First Amended Complaint does not plausibly allege, nor does Plaintiff make any tenable argument supporting, claims under the Federal Reserve Act or the Exchange Act.

### D.  Leave to Amend

Finally, the Court addresses whether leave to amend is appropriate.  Defendant argues that leave to amend would be futile because the "Agreement does not create any security or collateral interest on Plaintiff's behalf, contrary to the allegations in the FAC."  Mot. at 10.  Plaintiff does not seek leave to amend in her Opposition.  *See* Opp.

The Court addresses the five *Foman* factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.  *Eminence Capital*, 316 F.3d at 1052.  The first four factors are neutral.  The Court does not find any undue delay or bad faith by Plaintiff, nor does that Court find that Defendant would experience undue prejudice if Plaintiff was given leave to amend (factors one, two, and four).  As to factor three, this is Defendant's first motion to dismiss, so Plaintiff has not shown any failure to cure deficiencies.

The fifth factor, however, weighs heavily towards dismissal with prejudice.  Plaintiff's legal theory is essentially that she can pay off her credit card with make-believe money, an argument routinely rejected by the courts as legally baseless.  The Court recognizes that leave to amend is often granted for pro se plaintiffs and notes that Ms. Ha was granted leave to amend once in *New Cingular Wireless*, where she brought a similar breach of contract claim.  2024 WL 967003.  But shortly after it dismissed her first complaint with leave to amend, the *New Cingular Wireless* court dismissed her amended complaint without leave to amend because Ms. Ha was

unable to allege additional facts or new legal theories supporting her breach of contract claim.  *Ha v. New Cingular Wireless PCS, LLC*, No. 24-CV-00135-VKD, Dkt. 18 at 3, (N.D. Cal. May 10, 2024) ("Ms. Ha's amended complaint relies on the same documents and virtually identical legal theories as her original complaint.").  The Court sees no reason why this case is any different.  And notably, here, Plaintiff makes no suggestion in her opposition that amendment could cure any of the deficiencies in her operative complaint.  Thus, the Court finds that it is "absolutely clear" that amendment would be futile.  *Chambers*, 78 F.4th at 1107.  Accordingly, the Court GRANTS Defendant's motion to dismiss WITHOUT LEAVE TO AMEND.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to dismiss is GRANTED.  Plaintiff's claim is dismissed WITH PREJUDICE.

Dated: July 11, 2024

_____
BETH LABSON FREEMAN
United States District Judge